Shelley WILSON, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 1999–SC–0069–DG.

Supreme Court of Kentucky.

Feb. 22, 2001.

Michael C. Lemke, Louisville, Counsel for Appellant.

Albert B. Chandler III, Attorney General of Kentucky, Laura L. New, Special Assistant Attorney General, Louisville, Counsel for Appellee.

LAMBERT, Chief Justice.

In June 1989, at an accident scene in Nelson County, Bardstown police officers discovered a small spiral notebook in a wrecked truck. In the notebook, a suspected drug trafficker had listed the first names of his buyers, their telephone numbers, the amount of marijuana each had purchased, and the amount of money each owed him from the purchase. This same information regarding Shelley Wilson, Appellant herein, was included in the spiral notebook. The Bardstown police gave information from the notebook to the Nelson County Police Department, who in turn relayed the information to Metro (Louisville and Jefferson County) Narcotics Detective Tim Royse in the summer of 1992, three years after discovery of the notebook. This information was used in a widespread investigation, code named operation "Top Dog," of a large-scale drug trafficking syndicate.

In an effort to investigate the drug trafficker whose transaction notebook had been found and to learn the full names and addresses of those who might be involved in the drug syndicate, grand jury subpoenas were used to obtain the telephone records of the numbers listed in the drug transaction notebook. From these telephone records, Wilson's full name and address were obtained. As the investigation continued, there were other indications that Wilson was involved in illicit drug activity. Residents from Wilson's neighborhood complained that she was dealing drugs out of her house. Moreover, Metro Narcotics received an anonymous tip from someone who claimed to know of Wilson's drug activities. As a result of all of this information, police began surveillance of Wilson's residence. During this time, officers observed vehicle traffic patterns consistent with drug trafficking.

On the evening of November 12, 1992, between 5:00 and 6:00 p.m., Detective Royse saw Wilson take a wrong turn down a one-way alley between 1st and 2nd Streets in Louisville. Wilson's car also

had a headlight out. Having witnessed these two traffic violations, Detective Royse pulled Wilson over and asked for her driver's license. While Wilson was looking for her license, Detective Royse noticed rolling papers in Wilson's purse. Then, Detective Royse told Wilson that she was the subject of a drug investigation and explained to her that she was not under arrest, but that he would like for her to go to Metro Narcotics Headquarters for questioning. Wilson accompanied him to headquarters, where she was questioned about her marijuana use. She admitted that she used marijuana. When asked whether she was also dealing, Wilson replied, "Nothing you would be interested in."

Following this interview, Detective Royse signed an affidavit in support of a warrant to search Wilson's residence. The affidavit stated:

On the 15th day of June (Approx), 1992, at approximately 10:00 a.m. affiant received information from Off. John Turner, Bardstown P.D. who provided affiant with information & drug records related to a large scale marijuana operation in Jefferson and Nelson Counties. Through the use of Grand Jury Subpoenas was obtained the names of these drug dealers and their addresses. Also monetary amounts were noted on these records. In addition, numerous phone calls from toll records have shown a pattern of calls from marijuana dealers in Nelson Co., from 1988 to present. I have also received information from Officer Mike Newton of the Nelson County Police Department who states he has observed this subject's vehicle at one of the known drug dealer's businesses.

Acting on the information received, affiant conducted the following independent investigation. A background check was conducted on this subject and no arrests were found. A driver's license check was conducted and shows she lives at 1112 Fischer. Surveillance has been conducted on this residence on numer-

ous occasions and vehicles have been observed going to the residence, stay a short while then leave. When subject was stopped and asked for her driver's license, I observed what appeared to be a pack of rolling papers. After subject was brought to office and detectives were questioning her, she stated she used marijuana and when asked if she was dealing, she stated nothing you would be interested in.

The search warrant was obtained, and Wilson's residence was searched. Among the items seized was over fifteen pounds of marijuana.

In December 1992, Wilson, along with fourteen other persons, was indicted by a Jefferson County grand jury and charged with engaging in a criminal syndicate for the purpose of selling marijuana, along with other related offenses. The case proceeded many months and, through disputes about the discovery process, the defendants learned that the police had used the grand jury subpoenas to obtain the telephone records, and that the grand jury neither saw nor considered the telephone records prior to returning the indictments. Two of the twenty-two subpoenas involved Wilson's telephone records. Through these records, Wilson's name, address, and information about her phone calls were obtained. The specific information was that she had made several long distance phone calls to the suspected drug trafficker whose drug transaction notebook had been found in the wrecked truck in Nelson County.

Wilson and other defendants moved to suppress the telephone records, and the trial judge granted the motion. In doing so, the trial court held that the use of grand jury subpoenas to obtain pre-trial discovery for the police was an abuse of process. The Commonwealth did not appeal from that ruling. Thereafter, the defense moved to suppress other evidence which, it was claimed, had been obtained through the improperly obtained phone records. Once again, the trial court grant-

ed the motion. The Commonwealth filed an interlocutory appeal, and the Court of Appeals reversed the trial court's ruling.

In its holding, the Court of Appeals panel, being bound by the unchallenged trial court ruling that the telephone records were illegally obtained, stated that the evidence must be suppressed as "fruit of the poisonous tree" if the evidence was the direct or indirect product of illegal police actions. However, it concluded that if other information had been obtained from an independent source that was sufficient to support probable cause for the search warrant, then the search would still be valid. In upholding the validity of the search, the Court of Appeals listed four items of evidence that were independent of the phone records: 1) Wilson's admission that she used marijuana; 2) Wilson's possession of rolling papers; 3) Wilson's statement, "Nothing you would be interested in," could be construed as an admission to dealing, but in an amount insufficient to interest Detective Royse; and 4)vehicle traffic patterns at Wilson's residence consistent with drug trafficking. Pursuant to CR 76.20, Wilson moved this Court for discretionary review, and review was granted.

 The exclusionary rule, based upon the Fourth Amendment's prohibition against unreasonable searches and sei-

zures,[1] provides that evidence obtained through an illegal search is not admissible against an accused.[2] The rule extends to the direct as well as to the indirect products of official misconduct.[3] Thus, evidence cannot be admitted against an accused if the evidence is derivative of the original illegality, i.e., is "tainted"[4] or is the proverbial "fruit of the poisonous tree."[5] However, a major exception to the exclusionary rule exists for information obtained from independent or causally remote sources. In describing this exception to the exclusionary rule, the United States Supreme Court has stated,

> The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all. Of course this does not mean that the facts thus obtained become sacred and inaccessible. If knowledge of them is gained from an independent source they may be proved like any others.[6]

Evidence need not be excluded if the connection between the illegal conduct and the discovery and seizure of the evidence is highly attenuated,[7] or when evidence has been obtained by means "sufficiently distinguishable" from the initial illegality so that the evidence is "purged of the primary taint."[8]

1. *Olmstead v. United States,* 277 U.S. 438, 457, 48 S.Ct. 564, 72 L.Ed. 944 (1928)(overruled on other grounds by *Berger v. New York,* 388 U.S. 41, 51, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967) and on other grounds by *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)).

2. *Weeks v. United States,* 232 U.S. 383, 392, 34 S.Ct. 341, 58 L.Ed. 652 (1914)(overruled in part on other grounds by *Elkins v. United States,* 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669(1960) and in part on other grounds by *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961)).

3. *Wong Sun v. United States,* 371 U.S. 471, 484, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963).

4. *Segura v. United States,* 468 U.S. 796, 804, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984).

5. *Id.* (quoting *Nardone v. United States,* 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307 (1939)).

6. *Segura v. United States,* 468 U.S. 796, 805, 104 S.Ct. 3380, 3385, 82 L.Ed.2d 599, 608–609 (1984)(quoting *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 392, 40 S.Ct. 182, 64 L.Ed. 319 (1920)).

7. *Segura v. United States,* 468 U.S. 796, 805, 104 S.Ct 3380, 3385, 82 L.Ed.2d 599, 608 (1984)(citing *Nardone v. United States,* 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307 (1939)).

8. *Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

Wilson contends that the exclusionary rule requires suppression of the evidence seized during the search of her residence because the affidavit supporting the request for the warrant was directly dependent on the telephone records, which the trial court found were improperly obtained.[9] The police, she further argues, would have known neither her name nor her address without these telephone records.

We disagree. The connection between the police conduct in obtaining the telephone records and the evidence seized during the search of Wilson's residence is so attenuated that the primary "taint" of the police conduct has been dissipated. Although the records provided Wilson's name and address, surveillance of her residence was based not only upon this information, but upon complaints from her neighbors and an anonymous tip. Thereafter, police noticed traffic patterns at her residence that were consistent with drug dealing, i.e., vehicles would stop there for a short time and then leave. Also, Wilson's vehicle was seen at the residence of the suspected drug trafficker. Finally, when Detective Royse conducted a valid traffic stop of Wilson, he saw drug paraphernalia in her purse. At police headquarters, Wilson admitted to drug use and made an implicitly incriminating comment about her involvement in drug dealing.[10]

It should be noted with regard to the traffic stop, that an officer who has probable cause to believe a civil traffic violation has occurred may stop a vehicle regardless of his or her subjective motivation in doing so.[11] Although Detective Royse appears to have stopped Wilson to further a drug investigation, his subjective motivation does not invalidate the stop as it was made validly and conducted within the bounds of official propriety.

Wilson further contends that the Court of Appeals judgment should be reversed because it relied upon illegally obtained information in the affidavit in upholding the validity of the search. In support of this contention, Wilson argues that none of the four factors relied upon by the Court of Appeals would have come into play without the telephone records. To reiterate, these four factors were 1) Wilson's admitted drug use, 2) the rolling papers, 3) Wilson's statement, "Nothing you would be interested in," and 4)the traffic patterns. As stated above, the first three of these items occurred after the valid traffic stop and thus came about by means sufficiently distinguishable from the telephone records. The traffic patterns were observed once Wilson's home was put under surveillance as a result of information about her being on the drug clientele list in the spiral notebook as well as the anonymous tip and the neigh-

9. It should be emphasized that we do not hold and the Commonwealth does not concede that suppression of the telephone records was required. However, the Commonwealth sought no review of the trial court's ruling thereon, and therefore the Commonwealth acknowledges that the issue is not before this Court. The Court of Appeals accepted the view that the trial court's decision to suppress the telephone records was *res judicata* and not available for appellate review.

10. It should also be noted that the addresses and names associated with telephone numbers, at least those that are listed, are in the public domain. For example, at an Internet site called "phonebook.com" (which promises "Find out anything about anyone!") there is a heading entitled "Reverse Phone Directory."

If one types in 502–637–8604 (one of the numbers listed in the drug transaction notebook found in the wrecked truck at the accident scene in Nelson County), the following listing comes up: Shelly K. Wilson, 1112 Fischer Ave., etc.

The suppression of the telephone records, at least the one revealing Wilson's full name and address (but not the records detailing information about long distance calls), would appear improper in light of the fact that this information is freely available, through the web site mentioned above as well as from other sources.

11. *United States v. Akram,* 165 F.3d 452, 455 (6th Cir.1999)(citing *Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)).

bors' complaints. Thus, although the observance of the traffic patterns was an indirect result in part of the telephone records, it also resulted from other information, rendering the police activity causally remote from the resultant search of Wilson's residence.

For the foregoing reasons, the judgment of the Court of Appeals is affirmed.

COOPER, GRAVES, KELLER and WINTERSHEIMER, JJ., concur.

STUMBO, J., files a separate dissenting opinion in which JOHNSTONE, J., joins.

STUMBO, Justice, dissenting.

Respectfully, I must dissent. I would reverse the decision of the Court of Appeals in regard to the suppression of the telephone records and would reinstate the holding of the trial court on that issue. The trial court held, and I agree, that the improper use of the Grand Jury subpoena power to obtain the telephone records renders the evidence found because of them "the fruit of the poisonous tree." The Commonwealth did not appeal the holding that the telephone records were improperly obtained and should be suppressed, but does contest the trial court's finding that the other evidence is tainted by the illicit nature of the phone record's source. The argument which succeeded in the Court of Appeals, and is again successful here, is that there was other sufficient evidence from an independent source to support probable cause for the search warrant and therefore the evidence seized need not be suppressed.

In regard to Appellant, the other evidence emphasized by the majority consisted of observation that "vehicles would stop [at Appellant's residence] for a short time and then leave," that she was in possession of rolling papers when stopped, that she admitted to marijuana use when questioned, and when asked if she dealt in drugs, said it was "nothing you would be interested in." While this evidence might support a finding of probable cause, what is not recounted or emphasized by the majority is that the only way the investigation focused upon Appellant was through the illegally obtained telephone records. Had there been no phone records, Appellant's name and address would not have come to the attention of the police, her house would not have been placed under surveillance, and she would not have been stopped by the police and questioned in the first place. Nowhere in the affidavit supporting the issuance of the search warrant is there any evidence, or other information, that would explain why the Appellant became the object of law enforcement attention in the first place, if not for the telephone records. The doctrine of the fruit of the poisonous tree has steadily weakened over the past two decades. With the issuance of this opinion, it nears extinction in the Commonwealth.

JOHNSTONE, J., joins this dissent.