**Nicholas HORN, Appellant**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 2006–CA–002386–MR.**

Court of Appeals of Kentucky.

Nov. 9, 2007.

John K. Carter, LaGrange, KY, for Appellant.

Gregory D. Stumbo, Attorney General of Kentucky, David W. Barr, Assistant Attorney General, Frankfort, KY, for Appellee.

Before NICKELL, STUMBO, and THOMPSON, Judges.

## OPINION

THOMPSON, Judge.

Nicholas Horn appeals from a judgment of the Grayson Circuit Court following his conditional guilty plea to manufacturing methamphetamine and possession of anhydrous ammonia in an unapproved container with the intent to manufacture methamphetamine. Pursuant to his plea, Horn reserved the right to appeal the denial of his suppression motion. Concluding that the trial court did not err, we affirm.

On October 4, 2005, officers of the Greater Hardin County Narcotics Task Force learned that two men were in the process of purchasing lithium batteries and a large quantity of pseudoephedrine. Because the two items were commonly used in the manufacture of methamphetamine, police approached them and inquired about the intended purpose of the purchase. During questioning, the two men revealed that they intended to deliver the items to Nicholas Horn, at a detached garage at 1763 Summit Road, in exchange for money and illegal drugs. As a result of further discussion with police, the two men agreed to cooperate in an undercover operation targeted at Horn.

The following day, on October 5, 2005, with the two men participating as confidential informants, task force members began surveillance around the detached garage and provided the informants with packaged pseudoephedrine tablets and lithium batteries. The items' packages were treated with a highly transferable substance which is only visible under ultraviolet light. If the packages were handled by Horn, the substance would transfer to Horn's hands and confirm that he had accepted the items from the informants.

After the informants approached a garage door and knocked, Horn opened the door and allowed them inside. After gaining entry, the transaction was completed and the informants left the garage and met with police at a nearby location. After confirming that the delivery had been made, informants notified police that they had observed anhydrous ammonia, a necessary precursor to methamphetamine, inside the garage.

The task force then approached the garage, announced their presence, and requested that Horn open the door. After Horn failed to open the door, and believing that he may be in the process of destroying evidence of a serious crime, the officers forcibly entered the building and immediately searched for Horn. After Horn was located sitting behind a large chair, officers requested that he consent to a search of the garage but he refused.

As a result of his refusal, police obtained a search warrant for the building while Horn was detained at the scene. During the execution of the search warrant, police discovered several items connected to the manufacture of methamphetamine and also a firearm. Additionally, after exposure to ultraviolet light, it was confirmed that Horn's hands contained the substance used to treat the packaged items.

On October 31, 2005, Horn was indicted by a Mason County grand jury for manufacturing methamphetamine enhanced due to his possession of a firearm and possession of anhydrous ammonia in an unapproved container with intent to manufacture methamphetamine. Subsequently, Horn filed a motion to suppress on the basis that the search of the garage violated his Fourth Amendment protections against unreasonable searches and seizures. The Commonwealth responded that the search and seizure was valid under the exigent circumstances exception or, in the alternative, pursuant to a valid search warrant.

■ After an evidentiary hearing and the submission of briefs, the trial court denied Horn's motion to suppress. In its written order, although finding that the warrantless, forced entry of the garage was not justified under the exigent circumstances exception,[1] the trial court ruled that the subsequent search of the garage was constitutional because of the valid search warrant. While the forced entry by officers had been illegal, the court ruled that the warrant sufficiently removed the taint of the illegal entry because its issuance was entirely unrelated to any information acquired after the illegal entry into the garage.

After the denial of his suppression motion, Horn entered his conditional guilty plea to manufacturing methamphetamine without the firearm enhancement and possession of anhydrous ammonia in an unapproved container with the intent to manufacture methamphetamine and was sentenced to ten years' imprisonment. This appeal followed.

On appeal, Horn's sole assignment of error is that the trial court erred when it denied his motion to suppress the evidence obtained as a result of the search of the garage. Specifically, he alleges that the search was a violation of his constitutional protections against illegal searches and seizures because it was either an unjustified warrantless search or it was a search pursuant to an invalid search warrant.

■ Our standard of review of a trial court's denial of a motion to suppress is two-fold as set out in *Ornelas v. United States,* 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996), and adopted by Kentucky in *Adcock v. Commonwealth,* 967 S.W.2d 6 (Ky.1998). First, we determine whether the findings of fact are supported by substantial evidence. *Id.* at 8. If the findings are supported by substantial evidence, they are conclusive and will not be disturbed. *Commonwealth v. Harrelson,* 14 S.W.3d 541, 549 (Ky.2000).

■ Secondly, we then conduct a *de novo* review of the trial court's application of the law to the established facts to determine whether its ruling was correct as a matter of law. *Adcock v. Commonwealth,* 967 S.W.2d at 8. Under *de novo* review, we

---

1. All searches without a warrant are unreasonable unless it can be shown that they come within one of the exceptions to the rule that a search must be conducted pursuant to a valid warrant. *Cook v. Commonwealth,* 826 S.W.2d 329, 331 (Ky.1992). These exceptions, commonly called exigent circumstances, include situations in which an officer reasonably believes that evidence of a crime may be destroyed if action is not taken immediately. *Taylor v. Commonwealth,* 577 S.W.2d 46, 48 (Ky.App.1979).

afford no deference to the trial court's application of the law to the established facts. *Cinelli v. Ward,* 997 S.W.2d 474, 476 (Ky.App.1998).

After reviewing the record, we conclude that the trial court's findings of fact are supported by substantial evidence. Horn has not challenged any of the factual findings cited in the trial court's written order denying his motion to suppress. Consequently, our task is simply to determine whether the trial court correctly applied the law to the facts. *Adcock v. Commonwealth,* 967 S.W.2d at 8.

Horn first contends that the search of the garage was unconstitutional because police illegally entered the garage without a warrant. Although Horn acknowledges that a search warrant was issued after the forced entry of the garage, citing *United States v. Chambers,* 395 F.3d 563 (6th Cir. 2005), he contends that the incriminating evidence should have been suppressed as being the fruits of an illegal search despite the issuance of the search warrant. We disagree.

While Horn cites *United States v. Chambers,* for the proposition that evidence should be suppressed following an illegal entry of a residence despite the subsequent issuance of a search warrant which was based on information obtained prior to the illegal entry, we conclude that *Chambers* has no application in the instant case. The two issues in *Chambers* were whether the police had justifiably entered Chambers' residence pursuant to the exigent circumstances exception or alternatively whether Chambers' post-arrest consent to search his residence was given voluntarily.

Disposing of these two issues, the Sixth Circuit held that the warrantless entry into Chambers' residence was not justified pursuant to the exigent circumstances exception because the police had not reacted to an unanticipated exigency but had rather created the exigency for themselves. *Id.* at 569. As to the second issue, the court held that Chambers' post-arrest consent was invalid because it was not voluntarily given under the circumstances of the case. *Id.* at 569–70. Although a search warrant for Chambers' residence was issued, the effect of the issuance of the search warrant, after the illegal entry had already been made, was not mentioned in the court's opinion. Therefore, *Chambers* is not applicable to the instant case.

In the context of resolving the admissibility of allegedly illegally obtained evidence, the basic rule has been that "[t]he exclusionary rule, based upon the Fourth Amendment's prohibition against unreasonable searches and seizures, provides that evidence obtained through an illegal search in not admissible against an accused." *Wilson v. Commonwealth,* 37 S.W.3d 745, 748 (Ky.2001). However, it is well established that evidence is not to be excluded if the connection between the illegal police conduct and the discovery and seizure of the evidence is so attenuated as to dissipate the taint of the illegal police conduct. *Segura v. United States,* 468 U.S. 796, 805, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984).

 Essentially, if the police discovered the subject evidence from an "independent source," unrelated to their illegal conduct, the evidence can be admitted against a defendant despite his invocation of the exclusionary rule. *Wilson v. Commonwealth,* 37 S.W.3d at 748. Put simply, the exclusionary rule has no application when the police learned and discovered the incriminating evidence from a source "sufficiently distinguishable" (independent) from the initial illegality so that the evidence's taint of illegality is purged. *Id.*

■ Applying the law to the instant case, we conclude that the issuance of the search warrant, which was based solely on information obtained from the two confidential informants prior to the forced entry of the garage, constituted an independent source that was sufficiently distinguishable from the illegal forced entry of the garage. Because the two informants provided the requisite information which would authorize the search warrant prior to the illegal forced entry, the forced entry was purged of its illegality because it was not responsible for the discovery and seizure of the contraband.

■ Horn next contends that the search of the garage was based on an invalid search warrant because the police submitted a constitutionally defective search warrant affidavit to the district court. Specifically, Horn alleges that: (1) the warrant does not place him in possession of any substance that would constitute a violation of a drug statute; (2) the warrant does not state that the informants possessed pseudoephedrine tablets and lithium batteries when they entered the garage; (3) that the warrant does not state that the contraband was placed in his possession or left inside the garage; and (4) Horn's identity, as named in the affidavit, was only learned after the illegal entry.

Despite these allegations, we conclude that the search warrant affidavit sufficiently stated grounds that warranted the issuing of the search warrant by the district court. The search warrant affidavit provided that: the two informants were provided with approximately thirty grams of pseudoephedrine and a package containing eight lithium batteries; police observed the informants enter and leave the garage after several minutes; and the two informants did not have the contraband in their possession when they met with police following the drug transaction.

Clearly, the search warrant affidavit places Horn in possession of two chemicals used in the manufacture of methamphetamine constituting a violation of KRS 218A. 1432(1)(b). This statute provides that "[a] person is guilty of manufacturing methamphetamine when he knowingly and unlawfully ... [w]ith intent to manufacture methamphetamine possesses two or more chemicals or two or more items of equipment for the manufacture of methamphetamine." Horn possessed a sufficient quantity of two items, pseudoephedrine and lithium, which are used in the manufacture of methamphetamine. *Fulcher v. Commonwealth,* 149 S.W.3d 363, 369 (Ky. 2004). Finally, we note that Horn's identity was irrelevant to the issuance of a valid search warrant. *Miller v. Commonwealth,* 432 S.W.2d 638, 640 (Ky.1968).

■ Horn's final two arguments are that the search warrant affidavit is not subject to the good faith exception enunciated in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), and that the search warrant was based on a materially false warrant affidavit. First, the good faith exception provides that when an officer acting with objective good faith has obtained a search warrant from a judge and acted within its scope that the resulting discoveries by the officer will not be rendered inadmissible despite the search warrant's subsequent invalidation. *Id.* at 920–22, 104 S.Ct. 3405. Here, *Leon* is not applicable because the police had a valid search warrant.

Secondly, Horn asserts that the warrant affidavit does not truthfully state why police forcibly entered the garage. He further asserts that there was conflicting testimony between two officers as to why police forced entry into the garage. Despite these contentions, we conclude that they are irrelevant. The trial court ruled that the forced entry was not justified by

exigent circumstances which terminated the dispute regarding the justification for the forced entry. The trial court upheld the search due to the issuance and execution of a valid search warrant, and we find no error in that conclusion.

For the foregoing reasons, the judgment of the Grayson Circuit Court is affirmed.

ALL CONCUR.