# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: DECEMBER 18, 2014
NOT TO BE PUBLISHED

## Supreme Court of Kentucky

2013-SC-000678-MR

CHARLES STANFILL      APPELLANT

ON APPEAL FROM CALLOWAY CIRCUIT COURT
V.      HONORABLE TIMOTHY C. STARK, SPECIAL JUDGE
NO. 10-CR-00212

COMMONWEALTH OF KENTUCKY      APPELLEE

### MEMORANDUM OPINION OF THE COURT

### AFFIRMING

A Calloway Circuit Court jury found Charles Stanfill, Appellant, guilty of manufacturing methamphetamine, second or greater offense. Appellant was sentenced to twenty years' imprisonment, and now appeals as a matter of right, Ky. Const. § 110(2)(b). He raises the following issues on appeal: (1) the jury improperly heard about his earlier vacated conviction for possession of methamphetamine and (2) the trial court erred in denying his motion to suppress the evidence seized from his home.

### I. BACKGROUND

In December 2010, Appellant was arrested while on parole from a fifteen-year sentence for the manufacture of methamphetamine, possession of anhydrous ammonia in an unapproved container with intent to manufacture methamphetamine, and use of drug paraphernalia. Appellant's friend, Billy Reed, was present on the morning of Appellant's arrest and testified at trial to

the following facts. Reed stated he stopped by Appellant's house to pick up a torque wrench, and to ask Appellant for another payment on the car he was selling to him. Reed and Appellant were in Appellant's storage outbuilding getting the torque wrench when they saw police pull up. Reed has a previous conviction for manufacturing methamphetamine, and had been on parole before. Therefore, he was aware that his friend could be violating parole for associating with him, so he hid in a closet. He did not remember seeing any jars or tubes in the outbuilding, but did smell ammonia in the closet, which he associated with methamphetamine.

Parole Officer Chris Hendricks and Deputy Richard Steen also testified at trial. Officer Hendricks, Deputy Steen, and Parole Officer Brett Sorrells went to Appellant's residence that morning to arrest him for multiple parole violations, including testing positive for methamphetamine. As they walked around the property, Deputy Steen noticed a chemical smell coming from an outbuilding. He also heard what sounded like two male voices talking inside. He called for whoever was inside to come out. When Appellant walked out of the outbuilding, Officer Hendricks arrested him and patted him down. He found a lighter, wallet, empty pseudoephedrine blister packs, and a plastic baggie of white pellets, which Appellant claimed were fertilizer for his grandmother's flowers. Having heard a second voice coming from the outbuilding, Deputy Steen did a protective sweep of the building and found Reed hiding in the closet.

2

Deputy Steen called Detective Chris Garland of the Pennyrile Narcotics Taskforce. Detective Garland drove to Appellant's house and spoke with both Appellant and Reed, and was shown the white pellets found on Appellant (suspected to be ammonium nitrate pellets). Detective Garland applied for a search warrant, citing Deputy Steen's statements about the chemical smell coming from the outbuilding, the empty pseudoephedrine blister packs and suspected ammonium nitrate pellets found in Appellant's pockets.

Detective Garland testified that after obtaining the search warrant for the outbuilding, he and the Kentucky State Police Clandestine Lab Team found items he believed to be indicative of a meth lab inside. These items included empty packages of pseudoephedrine, some acids, lithium batteries that had been opened up, smoke generator hoses, coffee filters, various jars and bottles, and black items suspected to be lithium. A suspected one-step lab was located in the outbuilding on a shelf on top of the closet. Detective Garland took samples from the bottle to be sent for testing. Detective Garland next obtained a second warrant to search Appellant's residence and seized several items from the residence, including digital scales and a receipt from Walgreens for pseudoephedrine. Appellant was eventually found guilty of manufacturing methamphetamine and sentenced as noted above. This appeal followed.

## II. ANALYSIS

### A. Introduction of Previous Conviction at Trial

Movant's first argument on appeal is that he was prejudiced by the

Commonwealth's introduction at trial of his previous conviction for possession of methamphetamine. In 2008, Appellant was convicted of multiple crimes, including manufacturing methamphetamine, first offense, for which he was sentenced to fifteen years' imprisonment. As previously noted, he was on parole from this sentence when he was charged with the current offense.

At trial in the present case, Parole Officer Chris Hendricks testified on behalf of the Commonwealth that Appellant was previously of convicted of manufacturing methamphetamine *and* possession of methamphetamine.[1] However, the possession conviction had actually been subsequently vacated by the Court of Appeals because Appellant's convictions at the time for both manufacture and possession of methamphetamine violated double jeopardy law.[2] Appellant contends that the introduction of this voided conviction as evidence against him was material to the result of this case as there was a "reasonable likelihood that the false testimony could have affected the judgment of the jury." *Robinson v. Commonwealth*, 181 S.W.3d 30, 38 (Ky. 2005) (citing *United States v. Agurs*, 427 U.S. 97, 103) (1976)). Specifically, Appellant argues that there is a reasonable likelihood that hearing about

---

[1] Appellant's prior conviction for manufacture of methamphetamine was relevant evidence in the guilt phase of trial because he was charged with manufacture of methamphetamine, second or greater offense.

[2] This Court has held that possession of methamphetamine, KRS 218A.1415 is a lesser-included offense of manufacturing methamphetamine, KRS 218A.1432 for the purposes of double jeopardy. *Beaty v. Commonwealth*, 125 S.W.3d 196 (Ky. 2003). Convictions for both possession and manufacturing of methamphetamine would only be permissible if the methamphetamine that the defendant was convicted of possessing was not the same methamphetamine that he was convicted of manufacturing. *Id.*

4

another conviction against Appellant tipped the balance for the jury to find him guilty. Additionally, he asserts that learning about a conviction for possession likely also pushed the jury away from his innocent possession defense.[3]

Appellant admits this issue is unpreserved, but requests palpable error review pursuant to RCr 10.26. "Palpable error affects the substantial rights of the party and results in manifest injustice. Furthermore, an appellant claiming palpable error must show that the error was more likely than ordinary error to have affected the jury." *Boyd v. Commonwealth*, 439 S.W.3d 126, 129-30 (Ky. 2014). "In determining whether an error is palpable, 'an appellate court must consider whether on the whole case there is a substantial possibility that the result would have been any different.'" *Commonwealth v. Pace*, 82 S.W.3d 894, 895 (Ky. 2002) (citing *Commonwealth v. McIntosh*, 646 S.W.2d 43. 45 (Ky. 1983)).

The jury correctly heard from Officer Hendricks that Appellant had been previously convicted of manufacturing methamphetamine, and found him guilty of manufacturing methamphetamine, second or greater offense. Officer Hendricks's testimony regarding Appellant's vacated conviction for possessing methamphetamine is unlikely to have affected the jury's decision, given that the manufacture of methamphetamine already necessarily indicates possession. Thus, we do not hold that there is a substantial possibility that

---

[3] At trial, Appellant denied possession of the items in the outbuilding with the intention to make methamphetamine. He told the jury that Tim Smith, who served as a witness against him in his previous methamphetamine case, was afraid of him and would like nothing more than to see him go back to prison, indicating that Smith had planted the items on his property.

the result of Appellant's trial would have been any different due to introduction of his vacated conviction, and Officer Hendricks's testimony does not rise to the level of palpable error.

## B. Motion to Suppress

Appellant's second argument on appeal is that the trial court erred in denying his motion to suppress the evidence seized from his property. Specifically, he argues that Deputy Steen's search of his outbuilding was unreasonable, and therefore tainted the subsequent search warrant obtained by Detective Garland.

The trial court set out the following findings of fact and conclusions of law in its order denying Appellant's motion to suppress:

> An Officer from Probation and Parole went to the Defendant's dwelling to execute a detainer for apparent parole violations. From the evidence, it appears that the Defendant had multiple positive drug tests; he had a prior history of involvement with methamphetamine; when he was searched [incident to arrest] he was found to have a baggie with a white granular substances in it (which he said was fertilizer for his grandmother's plants, the fertilizer being ammonium nitrate); he also had empty pseudoephedrine blister packs in his pocket; and the Officer who had previously completed training in methamphetamine lab cleanup smelled ether coming from the structure.
>
> The Court finds that the search would be supported by reasonable suspicion that the probationer was engaged in criminal activity.

Apart from the facts included in the trial court's findings of fact, the following additional facts from testimony at trial are also relevant. When the officers went to Appellant's home to arrest him for parole violations, they first knocked on the door of his residence. When Appellant did not answer the door, they began to look around the property for him. Deputy

Steen approached an outbuilding that was located thirty to forty yards from Appellant's residence. He smelled ether coming from the building, and heard voices coming from inside that sounded like two males talking. Deputy Steen called for whoever was in the building to come out. Appellant came outside, but appeared to be talking to someone still inside the outbuilding. After Appellant was arrested, Deputy Steen testified that he asked whoever else was in the outbuilding to come out. When no one answered, he conducted a protective sweep of the building for officer safety, and found Reed. He testified that he was inside the building for less than five minutes, long enough to find Reed and bring him back outside. He did not seize any items while in the outbuilding or make note of what was in there.

Appellant argues that Deputy Steen's sweep of the outbuilding was unreasonable, and that this misconduct tainted the subsequent search warrant that was obtained by Detective Garland. Therefore, he asserts that any evidence seized as part of the search warrant is fruit of the poisonous tree.

A protective sweep for officer safety is an exception to the normal warrant requirement for search. *Guzman v. Commonwealth*, 375 S.W.3d 805, 807 (Ky. 2012). Objects found and seized during a protective sweep are admissible at trial. *Id.* Police may conduct a "protective sweep of areas not adjoining the place of arrest if supported by articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a

danger to those on the arrest scene." *Kerr v. Commonwealth*, 400 S.W.3d 250, 267 (Ky. 2013).

If evidence is obtained through an illegal search, it is not admissible against an accused. *Wilson v. Commonwealth*, 37 S.W.3d 745, 748 (Ky. 2001). This rule "extends to the direct as well as to the indirect products of official misconduct. Thus, evidence cannot be admitted against an accused if the evidence is derivative of the original illegality, i.e., is 'tainted' or is the proverbial 'fruit of the poisonous tree.'" *Id.*

However, "a major exception to the exclusionary rule exists for information obtained from independent or causally remote sources." *Id.* In other words, "[e]vidence need not be excluded if the connection between the illegal conduct and the discovery and seizure of the evidence is highly attenuated, or when evidence has been obtained by means 'sufficiently distinguishable' from the initial illegality so that the evidence is 'purged of the primary taint.'" *Id.*

Although Appellant argues that Deputy Steen's protective search was unreasonable, and that consequently Detective Garland's search warrant leading to the seized evidence was tainted, we note that Detective Garland's search warrant was not based on anything Deputy Steen saw or seized while conducting his protective sweep. In fact, Deputy Steen testified that he did not note any of the items that were in the outbuilding or report any suspicious items to Detective Garland. In the affidavit supporting his request for a search warrant, Detective Garland relied on Deputy Steen's smelling ether from

outside the outbuilding, the items seized from Appellant during a search incident to his arrest, and Appellant's history of manufacturing methamphetamine along with the fact that Appellant had tested positive for methamphetamine while on parole. Thus, we need not reach the question of whether Detective Steen's protective sweep was unreasonable because the subsequent search of Appellant's property was based on independent evidence unrelated to the sweep. *See Wilson, supra.*

"When reviewing a trial court's denial of a motion to suppress, we utilize a clear error standard of review for factual findings and a *de novo* standard of review for conclusions of law." *Jackson v. Commonwealth,* 187 S.W.3d 300, 305 (Ky. 2006). Whether "one enjoys a reasonable expectation of privacy is a question of law." *Burd v. Commonwealth,* 2011-SC-000531-MR, 2012 WL 5289418 at *2 (Ky. Oct. 25, 2012). Therefore, we review Appellant's allegation of error with respect to his motion to suppress *de novo.*

In this case, the trial court found that Appellant had multiple positive drug tests, a prior history of involvement with methamphetamine, a baggie with white granular substances and empty pseudoephedrine blister packs in his pocket, and that Deputy Steen, who had previously completed training in methamphetamine lab cleanup, had smelled ether coming from the structure. We agree with the trial court that from these facts (independent from Deputy Steen's sweep), Detective Garland's search was supported by reasonable suspicion that Appellant was engaged in criminal activity. Furthermore, the information supporting Detective Garland's search warrant is independent of

9

Deputy Steen's sweep.  Thus, the trial court did not err in denying Appellant's motion to suppress.

## III. CONCLUSION

Appellant was not prejudiced by the introduction of his previous Conviction (which had been vacated), and the trial court did not err in its denial of Appellant's motion to suppress.  For the aforementioned reasons, we affirm Appellant's conviction and sentencing.

All sitting.  All concur.

COUNSEL FOR APPELLANT:

Molly Mattingly, Assistant Public Advocate

COUNSEL FOR APPELLEE:

Jack Conway, Attorney General of Kentucky
David Wayne Barr, Assistant Attorney General