RENDERED:  JUNE 18, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1303-MR

KENNETH CIMIOTTA                                      APPELLANT


APPEAL FROM HARDIN CIRCUIT COURT
v.        HONORABLE LARRY ASHLOCK, JUDGE
ACTION NO. 24-CR-00010


COMMONWEALTH OF KENTUCKY                              APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CETRULO, A. JONES, AND TAYLOR, JUDGES.

JONES, A., JUDGE:  Kenneth Cimiotta appeals from the Hardin Circuit Court's

final judgment and sentence following the denial of his motion to suppress

evidence and his subsequent conviction at his jury trial.  We affirm.

## I.  BACKGROUND

The incident underlying this case stems from a narcotics investigation

in early January 2024.  Detective Neese of the Greater Hardin County Narcotics

Task Force contacted Officer Sidney Cates of the Elizabethtown Police

Department, asking him to be on the lookout for a blue Mitsubishi Raider truck and to pull the vehicle over if probable cause would justify the stop. At the time, Officer Cates did not know any details regarding the blue Mitsubishi or its owner. However, because he was employed as part of a K9 unit and the request came from a narcotics task force detective, Officer Cates presumed that the blue Mitsubishi truck was part of a narcotics investigation.

On January 8, 2024, at about 7:00 a.m., Officer Cates observed the blue Mitsubishi truck as it turned from St. John Road on to the US 31W bypass in Elizabethtown. The truck failed to properly signal the turn. Officer Cates called for support as he pulled the vehicle over for the observed traffic violation. Officer Cates then approached the vehicle and asked the driver, Cimiotta, for his driver's license, registration, and proof of insurance. Cimiotta produced his license and registration, but he had difficulty locating valid proof of insurance. While Cimiotta was attempting to retrieve his insurance information electronically, using his cell phone, Officer Cates asked him to step out of the vehicle. Officer Cates frisked Cimiotta and asked him a series of investigative questions, including whether he possessed drugs or weapons. He also requested consent to search the truck. Cimiotta did not consent to the search, and he continued to search for his insurance information on his phone.

At this point, Detective Neese arrived on the scene to support Officer Cates. While the detective stayed with Cimiotta, who was still searching for his insurance, Officer Cates conducted an open-air sniff around the vehicle with his K9 partner, Mina. The dog alerted at the rear driver-side bumper of the truck. The elapsed time from the stop to the dog sniff was approximately six to seven minutes. Police searched the vehicle and found contraband, including suspected marijuana, suspected methamphetamine, and items associated with drug trafficking, all of which were concealed in a locked toolbox on the driver's side.

As a result of this incident, the Hardin County grand jury indicted Cimiotta for first-degree trafficking in a controlled substance (methamphetamine, subsequent offender),[1] trafficking in marijuana (five pounds or more, subsequent offender),[2] first-degree trafficking in a controlled substance (less than ten dosage units, subsequent offender),[3] second-degree trafficking in a controlled substance (less than twenty dosage units, subsequent offender),[4] possession of drug

---

[1] Kentucky Revised Statute (KRS) 218A.1412, a Class B felony.

[2] KRS 218A.1421, a Class B felony.

[3] KRS 218A.1412, a Class C felony.

[4] KRS 218A.1413, a Class D felony.

paraphernalia,[5] failure to or improper signaling,[6] and first-degree trafficking in a controlled substance (fentanyl, subsequent offender).[7]

On June 5, 2024, during the pretrial phase, Cimiotta moved to suppress evidence resulting from the search of his vehicle, alleging that Officer Cates had impermissibly prolonged the traffic stop in order to conduct a dog sniff search. The trial court allowed the parties to brief the issue and conducted a hearing before it denied Cimiotta's motion. The trial court ruled that the traffic stop "was not extended solely for the purposes of the use of the K9. Instead, the stop was extended because Cimiotta was being given an opportunity to search for his proof of insurance and the sniff occurred during that short period of time." (Record (R.) at 82.)

Following the trial court's denial of his suppression motion, Cimiotta was convicted by a jury of first-degree possession of a controlled substance (methamphetamine).[8] The jury acquitted Cimiotta of trafficking in and possessing marijuana, and the Commonwealth dismissed the other counts of the indictment. The trial court ultimately sentenced Cimiotta to a term of three years' imprisonment and probated the sentence for three years. This appeal followed.

---

[5] KRS 218A.500, a Class D felony.

[6] KRS 189.380(1), a traffic violation.

[7] KRS 218A.1412, a Class B felony.

[8] KRS 218A.1415, a Class D felony with a maximum sentence of three years.

II. ANALYSIS

The single issue in this case is whether the trial court erroneously denied Cimiotta's motion to suppress evidence obtained from the warrantless search of his vehicle. "Warrantless searches are '*per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *Robbins v. Commonwealth*, 336 S.W.3d 60, 63 (Ky. 2011) (quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967)). "When reviewing a trial court's denial of a motion to suppress, we utilize a clear error standard of review for factual findings and a *de novo* standard of review for conclusions of law." *Greer v. Commonwealth*, 514 S.W.3d 566, 568 (Ky. App. 2017) (citation omitted).

Cimiotta initially argues that the traffic stop was pretextual, citing the request made by Detective Neese to Officer Cates that he should try to find probable cause to stop the Mitsubishi truck. However, Cimiotta also admits that the law allows police to conduct such stops. We agree that the subjective intent of the officer is not a relevant inquiry regarding the legality of the traffic stop. "A police officer is authorized to conduct a traffic stop when he or she reasonably believes that a traffic violation has occurred." *Commonwealth v. Lane*, 553 S.W.3d 203, 205 (Ky. 2018) (citing *Commonwealth v. Bucalo*, 422 S.W.3d 253, 258 (Ky. 2013)). "It should be noted with regard to the traffic stop, that an officer

who has probable cause to believe a civil traffic violation has occurred may stop a vehicle regardless of his or her subjective motivation in doing so." *Greer*, 514 S.W.3d at 569 (quoting *Wilson v. Commonwealth*, 37 S.W.3d 745, 749 (Ky. 2001)); *see also Whren v. United States*, 517 U.S. 806, 813, 116 S. Ct. 1769, 1774, 135 L. Ed. 2d 89 (1996). Officer Cates testified that he observed Cimiotta's blue Mitsubishi failure to signal a turn, which is a traffic violation. KRS 189.380(1). This evidence is uncontroverted, and so we must accept that the initial stop was lawful, regardless of Cimiotta's assertions of pretext.

Next, Cimiotta asserts that Officer Cates impermissibly extended the traffic stop to conduct a dog sniff search when he asked investigative questions which were unrelated to the matter for which the stop was made. The United States Supreme Court has held as follows:

> [a] police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures. A seizure justified only by a police-observed traffic violation, therefore, "become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation."

*Rodriguez v. United States*, 575 U.S. 348, 350-51, 135 S. Ct. 1609, 1612, 191 L. Ed. 2d 492 (2015) (quoting *Illinois v. Caballes*, 543 U.S. 405, 407, 125 S. Ct. 834, 834, 160 L. Ed. 2d 842 (2005)). In short, a police officer may not extend a traffic stop beyond its initial purpose in order to investigate unrelated matters unless some

other factor provides reasonable suspicion for additional investigation. *Id*., 575 U.S. at 355, 135 S. Ct. at 1615.

When our Supreme Court considered the impact of *Rodriguez*, it reasoned that "the key inquiry is not whether the stop is extended beyond its natural conclusion; rather, the Court must consider whether the officer's conduct (*e.g.*, asking unrelated questions or conducting a sniff test) adds any amount of time to the stop." *Carlisle v. Commonwealth*, 601 S.W.3d 168, 175 (Ky. 2020). In *Carlisle*, the Kentucky Supreme Court provided a helpful three-part analytical framework to resolve whether police had unlawfully prolonged the stop: "First, was the traffic stop ongoing or had it concluded? Second, if the stop was ongoing, did [the officer] inquire into matters unrelated to the stop's mission? Third, if the officer inquired into unrelated matters, did his inquiries prolong the stop?" *Id*.

In this case, the first question is relatively easy to resolve. Officer Cates's traffic stop was ongoing, as it was premised on a traffic violation, and the ordinary inquiries relating to a traffic violation include requests for the driver's license, registration, and proof of insurance. *See id.* at 176; *Rodriguez*, 575 U.S. at 355, 135 S. Ct. at 1615. Pursuant to KRS 304.39-117, a Kentucky motorist must present proof of insurance to a peace officer on request. Additionally, the General Assembly specifically allows a driver to provide such proof "in an electronic format[,]" *i.e.*, "the display of an image on any portable electronic device,

including a cellular phone or any other type of portable electronic device, depicting a current valid representation of the card[.]" KRS 304.39-117(4)(a).

Officer Cates's request for proof of insurance and Cimiotta's efforts to produce an electronic version on his cellular phone were both within the bounds of the law. Furthermore, because Cimiotta continued to search for his proof throughout this encounter, the traffic stop was ongoing for purposes of the first question in the *Carlisle* framework.

The second question asks whether the officer inquired into matters unrelated to the mission of the stop while the stop was ongoing. This question is somewhat more complex, because a peace officer may make inquiries into additional matters related to officer safety as part of the traffic stop.

> "The Supreme Court has long held that ensuring officers' personal safety is of critical importance in the conduct of traffic stops." *United States v. Soriano-Jarquin*, 492 F.3d 495, 500 (4th Cir. 2007). For that reason, officers performing a traffic stop are "authorized to take such steps as [are] reasonably necessary to protect their personal safety and to maintain their status quo." *United States v. Hensley*, 469 U.S. 221, 235, 105 S. Ct. 675, 83 L. Ed. 2d 604 (1985).

*Carlisle*, 601 S.W.3d at 179. Cimiotta argues that Officer Cates hindered his ability to provide his insurance information and extended the stop when he ordered him to exit the vehicle and frisked him for weapons. However, "[i]t is well settled that a police officer may, as a matter of course, order the driver of a lawfully-

stopped vehicle to exit the vehicle." *Id.* at 179-80 (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S. Ct. 330, 54 L. Ed. 2d 331 (1977)). Similarly, because "[t]raffic stops are especially fraught with danger to police officers," we have reasoned that a brief frisk for weapons during a traffic stop is a reasonable measure for officer safety. *Adams v. Commonwealth*, 699 S.W.3d 757, 760 (Ky. App. 2024) (quoting *Rodriguez*, 575 U.S. at 356, 135 S. Ct. at 1616).

Even so, Officer Cates also asked investigative questions during the stop. Officer Cates asked if Cimiotta was carrying "weapons, drugs, large amounts of money or anything?" (Appellant's Brief at 13.) These questions have little to do with a driver's failure to signal and are undeniably investigative. However, this is not the end of the inquiry. The third *Carlisle* question asks if the officer's inquiries prolong the stop. On this matter, the Kentucky Supreme Court has held that police do not unreasonably prolong a roadside detention if there are "concurrent operations," *i.e.*, if police perform investigative functions while "simultaneously completing the purpose of the stop." *Commonwealth v. Clayborne*, 635 S.W.3d 818, 826-27 (Ky. 2021) (quoting *Commonwealth v. Mitchell*, 610 S.W.3d 263, 270 (Ky. 2020)).

The trial court thoughtfully and accurately assessed the issue in its denial of Cimiotta's suppression motion, ruling that the dog sniff did not extend the traffic stop; instead, "the stop was extended because Cimiotta was being given

an opportunity to search for his proof of insurance and the sniff occurred during that short period of time." (R. at 82.) Our review of the record and the law supports the trial court's ruling. Cimiotta was searching for his insurance when the dog sniff search was conducted, and he had not yet found his insurance when Mina alerted to the presence of narcotics in his vehicle. Because the sniff search occurred concurrently with the mission of a diligently performed traffic stop, it is our view that Officer Cates did not unlawfully prolong the stop.

## III. CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment and sentence.


ALL CONCUR.


BRIEFS FOR APPELLANT:

Joshua M. Reho
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Kristin L. Conder
Assistant Attorney General
Frankfort, Kentucky